FILED
CLERK, U.S. DISTRICT COURT
12/15/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: DTA DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

April 2021 Grand Jury

| UNITED STATES OF AMERICA, | No. CR 20-00060(A)-JLS |
|---|---|
| Plaintiff, | **FIRST SUPERSEDING INDICTMENT** |
| v. | |
| STEPHEN WILLIAM BEAL, | [18 U.S.C. § 1341: Mail Fraud; 18 U.S.C. § 1343: Wire Fraud; 42 U.S.C. § 408: Social Security Fraud; 18 U.S.C. § 152(1): Concealment of Bankruptcy Assets; 18 U.S.C. § 152(7): Fraudulent Transfer and Concealment] |
| Defendant. | |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

1. Marsh & McLennan Companies, Inc. ("Marsh McLennan") was a global professional services firm headquartered in New York, New York.

2. Mercer (U.S.) Inc. ("Mercer") was a consulting firm headquartered in New York, New York, with offices located in Los Angeles and Irvine, California. Mercer was a subsidiary of Marsh

McLennan.  As part of its benefits package, Marsh McLennan offered Mercer employees the option to obtain long-term disability insurance coverage through two disability benefit plans.  Marsh McLennan insured two long-term disability benefit plans offered to Mercer employees.

3.   The Hartford Financial Services Group, Inc. ("the Hartford") was an insurance company headquartered in Hartford, Connecticut with offices in Lexington, Kentucky.  The Hartford was the third-party claims administrator of two long-term disability insurance policies offered to Mercer employees.  The Hartford was responsible for adjudicating and processing disability claims made by Marsh McLennan employees, including Mercer employees who obtained disability coverage under one or both of the two long-term disability benefit plans.

4.   To obtain initial disability payments from the Marsh McLennan employee long-term disability benefit plans for the first 30 months, an employee claimant needed to certify that his or her disability had prevented him or her from engaging in the duties of his or her present employment.

5.   To obtain disability payments from the Marsh McLennan employee long-term disability benefit plans after 30 months, an employee claimant needed to certify that his or her disability had prevented him or her from having substantial gainful employment for which the employee was reasonably qualified by education, training, or experience.  Long-term disability payments after the first 30 months were not available to claimants who were not disabled or whose disabilities did not prevent them from having substantial gainful employment for which they were reasonably qualified.

6. To continue receiving long-term disability payments under Marsh McLennan's long-term disability benefit plans, claimants were required to submit periodic claimant questionnaires and medical certifications to the Hartford. Claimants who were no longer disabled or whose disabilities no longer prevented them from having substantial gainful employment for which they were reasonably qualified were not entitled to further disability payments from Marsh McLennan's long-term disability benefit plans.

7. Defendant STEPHEN WILLIAM BEAL ("BEAL") held a bachelor's degree in business administration and resided in Los Angeles County, within the Central District of California. He was hired by Mercer as a mid-level human resources consultant to work at its Los Angeles office on January 31, 2005. Defendant BEAL's responsibilities were to provide presentations to large corporations regarding benefits and salary plans. After defendant BEAL was hired, he opted into two long-term disability insurance policies offered by Mercer.

8. While employed at Mercer, defendant BEAL was routinely late in providing work product to his superiors. Defendant BEAL was counseled on more than once occasion, told he needed to change his behavior, and told that his job was in jeopardy.

9. On or about March 20, 2006, defendant BEAL submitted an initial application for short-term disability insurance to Mercer, Marsh McLennan, and the Hartford. He later submitted a claim for long-term disability. Defendant BEAL's claim for long-term disability was approved on September 22, 2006.

10. Treating Physician 1 was a physician based in Orange County, California who evaluated defendant BEAL between 2009 and 2018.

11. Treating Physician 2 was a physician based in Orange County, California, who evaluated defendant BEAL in 2019.

12. Marsh McLennan Companies Personal Accident Insurance ("PAI") Plan ("the PAI Plan") was an employee welfare benefits plan offering accidental death benefits.

13. ABC Swimming Pools was located in Orange County, within the Central District of California.

14. On or about December 11, 2008, defendant BEAL entered into a contract to renovate the pool at his residence in the amount of approximately $35,000.

15. On October 5, 2009, defendant BEAL filed a voluntary petition (the "petition") for bankruptcy under Chapter 13 in the Central District of California, In re: Stephen William Beal, Bankruptcy Case No. 2:09-BK-37002-NB. Defendant BEAL identified ABC Swimming Pools as a creditor in the amount of approximately $6,200. In the petition, defendant BEAL stated that he had a potential claim against the PAI Plan for failure to "pay out on his deceased wife's insurance policy" and that recovery was "speculative." Defendant BEAL was required to notify the bankruptcy trustee of any proceeds and payments he received. Defendant BEAL was also required to obtain permission from the bankruptcy trustee and bankruptcy court prior to incurring any debt.

16. On or about January 28, 2010, defendant BEAL filed a lawsuit against the PAI Plan for failure to pay death benefits. Defendant BEAL did not report the filing of the lawsuit to the bankruptcy trustee, bankruptcy court, or his creditors.

17. On or about March 25, 2010 and on or about May 7, 2010, defendant BEAL obtained loans in the amount of $25,000 (repayment

4

amount $64,400). Defendant BEAL did not report the debt to the bankruptcy trustee, bankruptcy court, or his creditors.

18. On or about March 1, 2011, defendant BEAL obtained a judgment against the PAI Plan in the amount of $550,000 for failure to pay death benefits. Defendant BEAL did not report the judgment to the bankruptcy trustee, bankruptcy court, or his creditors.

19. On or about April 4, 2011, defendant BEAL received approximately $350,000 from the PAI Plan for failure to pay death benefits. Defendant BEAL did not report receipt of this money to the bankruptcy trustee, bankruptcy court, or his creditors.

20. On or about April 4, 2011, defendant BEAL transferred approximately $150,000 to two brokerage accounts.

21. On or about April 5, 2011, defendant BEAL paid ABC Swimming Pools approximately $6,500.

22. On or about April 8, 2011, defendant BEAL transferred approximately $100,000 to a brokerage account.

23. On June 13, 2011, defendant BEAL paid ABC Swimming Pools approximately $900.

<u>COUNTS ONE THROUGH SEVEN</u>

[18 U.S.C. §§ 1341]

The Grand Jury incorporates and realleges paragraphs 1 through 11 above as if fully set forth herein.

A. <u>SCHEME TO DEFRAUD</u>

Beginning on or before March 20, 2006 and continuing through at least on or about November 30, 2021, in Orange and Los Angeles Counties, within the Central District of California, and elsewhere, defendant STEPHEN WILLIAM BEAL ("BEAL"), knowingly and with intent to defraud, devised, participated in, executed, and attempted to execute a scheme to defraud Mercer, Marsh McLennan, and the Hartford as to material matters, and to obtain money and property from Marsh McLennan, by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

The fraudulent scheme operated, in substance, in the following manner:

    a.    Defendant BEAL would opt into long-term disability benefit plans offered by Mercer to its employees.

    b.    Defendant BEAL would falsely represent to Marsh McLennan and the Hartford that he was unable to obtain gainful employment for which he was reasonably well-qualified because of symptoms including memory problems, poor word finding, speech hesitation, an inability to concentrate, aphasia, difficulty speaking, fatigue, and an inability to read.

    c.    Defendant BEAL would falsely represent to Marsh McLennan and the Hartford that he was unable to obtain gainful employment for which he was reasonably well-qualified because his

disability prevented him from engaging in activities such as model rocketry and acting as a sailboat captain.

      d.    Defendant BEAL would falsely represent to Marsh McLennan and the Hartford that he was unable to complete household chores, that he had difficulty dressing himself in the morning, that he could not watch movies, that he could not complete crossword puzzles, and that he was unable to hike and ski.

      e.    Defendant BEAL would meet with physicians, including Treating Physician 1 and Treating Physician 2, and falsely represent that he suffered from symptoms including memory problems, poor word finding, speech hesitation, an inability to concentrate, aphasia, difficulty speaking, fatigue, and an inability to read, in order to cause the physicians to repeat these false representations to Marsh McLennan and the Hartford.

      f.    Contrary to the representations defendant BEAL made and caused to be made to Marsh McLennan and the Hartford, and as defendant BEAL then-well knew, defendant did not in fact suffer from memory problems, poor word finding, speech hesitation, an inability to concentrate, aphasia, difficulty speaking, fatigue, and an inability to read such that he was incapable of working.

      g.    Contrary to the representations defendant made and caused to be made to Marsh McLennan and the Hartford, and as defendant BEAL then well-knew, defendant BEAL could in fact engage in activities such as his rocketry hobby, captaining a sailboat, stage and screen acting, and multiple closed-book sailing, rocketry, and SCUBA diving examinations.

      h.    Contrary to the representations defendant BEAL made and caused to be made to Marsh McLennan and the Hartford, and as

defendant BEAL then-well knew, defendant was able to conduct household chores, dress himself, watch movies, complete crossword puzzles, hike, and ski.

      i.  As a result of defendant BEAL's fraudulent misrepresentations that he was incapable of obtaining gainful employment for which he was reasonably well-qualified, defendant BEAL would receive disability insurance payments from Marsh McLennan and the Hartford, knowing that he was not entitled to those funds. Between on or about March 22, 2006 and November 30, 2021, as a result of defendant BEAL's initial disability insurance application and subsequent claimant questionnaires and medical certifications that defendant BEAL prepared and caused to be prepared, Marsh McLennan paid insurance disability payments to defendant BEAL in excess of $1,000,000.

B.    USE OF THE MAILS

On or about the following dates, in Orange and Los Angeles Counties, within the Central District of California, and elsewhere, defendant BEAL, for the purpose of executing and attempting to execute the above-described scheme to defraud, caused the following items to be placed in an authorized depository for mail matter to be sent and delivered by the United States Postal Service according to the directions thereon:

| COUNT | DATE | ITEM MAILED |
|---|---|---|
| ONE | May 2, 2017 | Physician statement from Treating Physician 1 and Claimant questionnaire defendant BEAL caused to be mailed from the Central District of California to the Hartford in Lexington, Kentucky |
| TWO | January 23, 2019 | Check no. 2012045 from South Windsor, Connecticut to defendant BEAL in the amount of $2,916.67 |

| COUNT | DATE | ITEM MAILED |
|-------|------|-------------|
| THREE | December 4, 2019 | Check no. 2037968 from South Windsor, Connecticut to defendant BEAL in the amount of $14,583.35 |
| FOUR | January 22, 2020 | Check no. 2041412 from South Windsor, Connecticut to defendant BEAL in the amount of $2,916.67 |
| FIVE | June 23, 2020 | Check no. 2049588 from South Windsor, Connecticut to defendant BEAL in the amount of $2,916.67 |
| SIX | January 22, 2021 | Check no. 2060582 from South Windsor, Connecticut to defendant BEAL in the amount of $2,916.67 |
| SEVEN | September 27, 2021 | Check no. 2071709 from South Windsor, Connecticut to defendant BEAL in the amount of $2,916.67 |

COUNTS EIGHT THROUGH TWELVE

[18 U.S.C. §§ 1343]

The Grand Jury incorporates and realleges paragraphs 1 through 11 above as if fully set forth herein.

A.  SCHEME TO DEFRAUD

Beginning on or before March 20, 2006 and continuing through at least on or about November 30, 2021, in Orange and Los Angeles Counties, within the Central District of California, and elsewhere, defendant STEPHEN WILLIAM BEAL ("BEAL"), knowingly and with intent to defraud, devised, participated in, executed, and attempted to execute a scheme to defraud Mercer, Marsh McLennan, and the Hartford as to material matters, and to obtain money and property from Marsh McLennan, by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

The fraudulent scheme operated, in substance, in the following manner:

   a.  Defendant BEAL would opt into long-term disability benefit plans offered by Mercer to its employees.

   b.  Defendant BEAL would falsely represent to Marsh McLennan and the Hartford that he was unable to obtain gainful employment for which he was reasonably well-qualified because of symptoms including memory problems, poor word finding, speech hesitation, an inability to concentrate, aphasia, difficulty speaking, fatigue, and an inability to read.

   c.  Defendant BEAL would falsely represent to Marsh McLennan and the Hartford that he was unable to obtain gainful employment for which he was reasonably well-qualified because his

disability prevented him from engaging in activities such as model rocketry and acting as a sailboat captain.

   d. Defendant BEAL would falsely represent to Marsh McLennan and the Hartford that he was unable to complete household chores, that he had difficulty dressing himself in the morning, that he could not watch movies, that he could not complete crossword puzzles, and that he was unable to hike and ski.

   e. Defendant BEAL would meet with physicians, including Treating Physician 1 and Treating Physician 2, and falsely represent that he suffered from symptoms including memory problems, poor word finding, speech hesitation, an inability to concentrate, aphasia, difficulty speaking, fatigue, and an inability to read, in order to cause the physicians to repeat these false representations to Marsh McLennan and the Hartford.

   f. Contrary to the representations defendant BEAL made and caused to be made to Marsh McLennan and the Hartford, and as defendant BEAL then-well knew, defendant did not in fact suffer from memory problems, poor word finding, speech hesitation, an inability to concentrate, aphasia, difficulty speaking, fatigue, and an inability to read such that he was incapable of working.

   g. Contrary to the representations defendant made and caused to be made to Marsh McLennan and the Hartford, and as defendant BEAL then well-knew, defendant BEAL could in fact engage in activities such as his rocketry hobby, captaining a sailboat, stage and screen acting, and multiple closed-book sailing, rocketry, and SCUBA diving examinations.

   h. Contrary to the representations defendant BEAL made and caused to be made to Marsh McLennan and the Hartford, and as

11

defendant BEAL then-well knew, defendant was able to conduct household chores, dress himself, watch movies, complete crossword puzzles, hike, and ski.

   i. As a result of defendant BEAL's fraudulent misrepresentations that he was incapable of obtaining gainful employment for which he was reasonably well-qualified, defendant BEAL would receive disability insurance payments from Marsh McLennan and the Hartford, knowing that he was not entitled to those funds. Between on or about March 22, 2006 and November 30, 2021, as a result of defendant BEAL's initial disability insurance application and subsequent claimant questionnaires and medical certifications that defendant BEAL prepared and caused to be prepared, Marsh McLennan paid insurance disability payments to defendant BEAL in excess of $1,000,000.

B. <u>USE OF THE WIRES</u>

 On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendant BEAL, for the purpose of executing and attempting to execute the above-described scheme to defraud, caused the transmission of the following items by means of wire and radio communication in interstate and foreign commerce:

| COUNT | DATE | ITEM WIRED |
|---|---|---|
| EIGHT | September 6, 2018 | Physician statement from Treating Physician 1 defendant BEAL caused to be transmitted via facsimile from Orange County within the Central District of California to the Hartford in Lexington, Kentucky |

| COUNT | DATE | ITEM WIRED |
|---|---|---|
| NINE | November 6, 2019 | Physician statement from Treating Physician 2 and Claimant questionnaire defendant BEAL caused to be transmitted via facsimile from the Central District of California to the Hartford in Lexington, Kentucky |
| TEN | February 22, 2019 | Payment in the amount of $3,648.33 to be transmitted via Electronic Fund Transfer from South Windsor, Connecticut to the Central District of California |
| ELEVEN | March 22, 2019 | Payment in the amount of $3,648.33 to be transmitted via Electronic Fund Transfer from South Windsor, Connecticut to the Central District of California |
| TWELVE | December 31, 2019 | Payment in the amount of $18,241.65 to be transmitted via Electronic Fund Transfer from South Windsor, Connecticut to the Central District of California |

COUNT THIRTEEN

[42 U.S.C. § 408(a)(4)]

The Grand Jury incorporates and realleges paragraphs 1 through 11 above as if fully set forth herein.

Beginning on or before January 1, 2011 and continuing through at least on or about November 30, 2021, in Orange and Los Angeles Counties, within the Central District of California, and elsewhere, defendant STEPHEN WILLIAM BEAL ("BEAL"), having knowledge of the occurrence of an event affecting defendant BEAL's continued right to receive disability benefits made by the Social Security Administration, concealed and failed to disclose that event with the intent to fraudulently secure payment when no payment was authorized. Specifically, defendant BEAL intentionally concealed the fact that he was no longer disabled in order to receive and spend these disability benefits. By such action, defendant BEAL received approximately $400,000 in Social Security monies to which he was not entitled.

COUNT FOURTEEN

[18 U.S.C. § 152(1)]

The Grand Jury incorporates and realleges paragraphs 12 through 23 above as if fully set forth herein.

From on or about April 4, 2011 through on or about February 4, 2015, in Los Angeles and Orange Counties, within the Central District of California and elsewhere, defendant STEPHEN WILLIAM BEAL, then a debtor in a case under Title 11 of the United States Code, did knowingly and fraudulently conceal property belonging to In re: Stephen William Beal, Bankruptcy Case No. 2:09-BK-37002-NB, specifically proceeds and payments to him received from the PAI Plan in the amount of approximately $350,000, from the trustee charged with control of the debtor's property and from the creditors and the United States Trustee.

<u>COUNT FIFTEEN</u>

[18 U.S.C. § 152(7)]

The Grand Jury incorporates and realleges paragraphs 12 through 23 above as if fully set forth herein.

From on or about April 4, 2011 through on or about February 4, 2015, in Los Angeles and Orange Counties, within the Central District of California and elsewhere, defendant STEPHEN WILLIAM BEAL, then a debtor in a case under Title 11 of the United States Code, namely, <u>In re: Stephen William Beal</u>, Bankruptcy Case No. 2:09-BK-37002-NB, did knowingly and fraudulently, and with intent to defeat the provisions of Title 11, transfer and conceal property, proceeds and payments to defendant BEAL received from the PAI Plan in the amount of approximately $350,000, thereby causing a loss of assets from the trustee charged with control of the debtor's property and from the creditors and the United States Trustee.

FORFEITURE ALLEGATIONS

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of defendant's conviction of any of the offenses set forth in Counts One through Twelve and Fourteen through Fifteen of this Indictment.

2. Defendant, if so convicted, shall forfeit to the United States of America the following:

(a) All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offense, including but not limited to:

   i. 7103 E. El Paseo Street, Long Beach, California 90815, and,

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), defendant, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/s/
_____
Foreperson

TRACY L. WILKISON
United States Attorney

CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division

ANNAMARTINE SALICK
Assistant United States Attorney
Chief, Terrorism and Export
Crimes Section

MARK TAKLA
Assistant United States Attorney
Terrorism and Export Crimes
Section

WILSON PARK
Assistant United States Attorney
Terrorism and Export Crimes
Section