**MEGHAN BLANCO (238171)**
**LAW OFFICES OF MEGHAN BLANCO**
**28202 Cabot Road, Suite 300**
**Laguna Niguel, California 92677**
**Telephone:     (949) 296-9869**
**Facsimile:     (949) 606-8988**
**Email:mblanco@meghanblanco.com**

Attorney for Stephen Beal

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-CR-60-JLS |
|---|---|
| Plaintiff, | SENTENCING MEMORANDUM |
| v. | |
| STEPHEN BEAL, | |
| Defendants. | |

    Defendant Stephen Beal, by and through his counsels of record, files the instant sentencing memorandum.  This memorandum is based on the attached memorandum of points and authorities and any other arguments or evidence the Court wishes to hear at the sentencing hearing.

1

                                        Respectfully Submitted,

Dated: February 12, 2024

                                        _*//s//* Meghan Blanco_____
                                        MEGHAN BLANCO
                                        Attorney for defendant
                                        STEPHEN BEAL

MEMORANDUM OF POINTS AND AUTHORITIES

I. Introduction

Mr. Beal pleaded guilty, pursuant to a plea agreement, to wire, social security, and bankruptcy fraud.  Pursuant to the plea agreement, the parties agreed to jointly recommend that the Court impose a sentence of time served, to run concurrent to the sentence imposed in *United States v. Beal*, 19-CR-47-JLS.  Mr. Beal concurs with the Guidelines calculations contained in the PSR, except for his revised criminal history score, and urges the court to sentence him to the low end of that range, to run concurrent to the sentence imposed in *United States v. Beal*, 19-CR-47-JLS.

II. Mr. Beal's Objections to PSR

Mr. Beal objects to the information contained in ¶¶ 70, 71, 73, 75 fn3, and 79.

Paragraphs 70-71: Mr. Beal objects to consideration of the information contained in paragraph 70 and 71.  The death of Mr. Beal's wife was tragic and unrelated to the instant offense.  Further, Mr. Beal has never been charged with any misconduct relating to her death.  Consideration of the circumstances of her death would be inappropriate in this case.  Mr. Beal also objects to several pieces of information contained in paragraphs 70-71 as untrue, specifically, (1) all references to Mr. Beal being uncooperative and not revealing information about his wife

3

to hospital staff, and (2) all information contained in the last sentences of paragraphs 70 and 71.

Paragraph 73: Mr. Beal did not discuss his relationship with Ildiko with Probation because he plans to appeal his conviction in the related case, where he was convicted of creating a package bomb that killed her. Although his conviction in that case is a factor the Court can will consider (at a minimum, it factors into his revised criminal history calculation), Mr. Beal disputes the factual accuracy of the information contained in paragraph 73. Specifically, Mr. Beal objects to all the information following "Puerto Vallarta" on the final line of page 13, as factually untrue.

Footnote 3, Paragraph 75: Mr. Beal objects to all of footnote 3 as misleading and untrue. Ms. Stone managed all of Mr. Beal's affairs while he was incarcerated, including paying for his mortgage (for the house he agreed to give to the government), upkeep of his house, and all other expenses that he could not personally pay because of his incarceration.

Paragraph 79: The plea agreement limits Mr. Beal's ability to appeal his conviction in this case. The statement contained in paragraph 79 appears to be a carryover from his statement regarding his conviction in the related case, which he is appealing, and is untrue as applied to this case.

III. Guidelines Calculation

The USPO finds that Mr. Beal's base offense level is 7, pursuant to USSG § 2B1.1. (PSR ¶ 35). Pursuant to section 2B1.1(b)(H), that figure is increased by 14 levels because the loss amount exceeded $550K but was less than $1.5M. The offense level is further increased by two levels because Mr. Beal made a misrepresentation during bankruptcy proceedings. After factoring in a 3-level reduction for acceptance of responsibility, Mr. Beal's total offense level becomes 20. He is in criminal history category II[1], and his Guidelines rage is 37-46 months. Mr. Beal requests that the Court follow the parties' recommendations in the plea agreement, and order that his sentence run concurrent to the sentence imposed in 19-CR-47-JLS. He further requests that the Court sentence him at the low end of the applicable Guideline's range.

IV. Sentencing Considerations

The parties agree to the Guidelines calculation. They further agree that a Guidelines sentence is appropriate, and that the sentence should run concurrent to any sentence imposed in *United States v. Beal*, 19-CR-47-JLS. The Guidelines in this case call for a sentence of 37-46 months. The only dispute is whether the sentence should

---

[1] Mr. Beal now has 3 criminal history points, as he has been sentenced to more than one year and one month in his related case.

5

be at the low-end or high-end of the applicable Guideline's range.

This Court has a duty to consider all the factors outlined in 18 U.S.C. § 3553(a) in determining the appropriate sentence in Mr. Beal's case, to reach a sentence that is sufficient but not greater than necessary to address the goals of sentencing.

Mr. Beal was born into a middle-class family in Long Beach, California, in 1959. (PSR ¶ 58). He attended Cerritos College for two years and then Pepperdine University, where he graduated with a degree in Management in 1978. (PSR ¶ 87). He married his college sweetheart, Christine, in 1979. (PSR ¶ 67). They remained happily married until Christine's untimely death in 2008.

Mr. Beal and Christine provided a loving and stable family environment to their three children, Charlene, Nathaneal, and Charity. They were involved in music and frequently did projects together as a family. (PSR ¶ 69). Mr. Beal remains extremely close with all his children. (PSR ¶¶ 72, 76).

Mr. Beal worked as a management consultant for much of his adult life. He was extremely talented, and at the end of his career, he earned approximately $180,000 a year. However, Mr. Beal's life took a tragic turn around the time his wife, Christine, died. He stopped working and experienced depression, for which he sought some therapy.

6

His daughter noted that Beal experienced "horrific grief" for years following Christine's death.  (PSR ¶72).

In 2018, Mr. Beal met Valerie Stone through an online dating service.  (PSR ¶ 75).  Their relationship developed rapidly and deeply.  Before his arrest, they became engaged and committed to spending the rest of their lives together.  She has continued to support Mr. Beal through his arrest and trial.  She continues to support him today.  Mr. Beal also maintains regular contact with his children.

Mr. Beal has been diagnosed with cancer twice.  Although he survived a somewhat recent diagnosis of bladder cancer, the cancer is highly recurrent and often fatal.  (PSR ¶ 81).  He is currently being monitored by medical staff at MDC for prostate cancer.

V.   Restitution

Mr. Beal respectfully requests that the Court put-over restitution to same date as the restitution hearing in 19-CR-47-JLS.

VI. BOP Placement

Mr. Beal respectfully requests that the Court recommend his placement in a facility as close to Oregon as possible.

VII. Conclusion

For the foregoing reasons, Mr. Beal respectfully requests that the Court sentence him to 37 months in

7

custody, to be served concurrent to his sentence in United States v. Beal, 29-CR-47-JLS.

Respectfully Submitted,

                          *//s// Meghan Blanco*
                          MEGHAN BLANCO
                          Attorney for defendant
                          STEPHEN BEAL